Minute Order Form (06/97)

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 1725 | **DATE** | 7/25/2000 |
| **CASE TITLE** | Abbott vs. Dey. L.P. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Based on the findings of fact and conclusions of law set forth in the attached memorandum, plaintiff's motion for preliminary injunction (26-1) is denied. Having held a hearing on plaintiff's motion for preliminary injunction, the Court dismisses as moot plaintiffs' motion to schedule a preliminary injunction hearing (3-1). The case is set for status on 10/16/00 at 9:30 a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | JUL 26 2000 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 59 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| OR6 | courtroom deputy's initials | 00 JUL 25 PM 5:11 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ABBOTT LABORATORIES, )
MITSUBISHI-TOKYO )
PHARMACEUTICALS, INC. f/k/a )
TOKYO TANABE CO., LTD., )
)
Plaintiffs, )
)
v. ) Case No. 00 C 1725
)
DEY, L.P. and DEY, INC., )
)
Defendants. )

**DOCKETED**

**JUL 2 6 2000**

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

In this patent case, Tokyo Tanabe Company, Ltd., now known as Mitsubishi-Tokyo Pharmaceuticals, Inc., and its exclusive United States licensee, Abbott Laboratories, have sued Dey, L.P. and Dey, Inc., for patent infringement. Tanabe and Abbott allege that a lung surfactant product developed and manufactured by Dey's licensor, infringes claims 1, 9 and 12-15 of U.S. Patent No. 4,397,839 (the '839 patent), which covers an improvement on U.S. Patent No. 4,338,301 (the '301 patent). The plaintiffs moved for a preliminary injunction seeking to preclude Dey from offering its product, Curosurf®, for sale in the United States. In connection with plaintiffs' motion, the Court conducted an evidentiary hearing, and at the close of the plaintiffs' evidence, Dey moved for denial of the preliminary injunction.

For a patent owner to obtain a preliminary injunction against an alleged infringer, he must show: (1) a reasonable likelihood of success on the merits; (2) the prospect of irreparable harm; (3) a balance of the parties' hardships in favor of injunction; and (4) no potential injury to an

important public interest. *See, e.g., Jeneric/Pentron, Inc. v. Dillon Company, Inc.*, 205 F.3d 1377, 1380 (Fed. Cir. 2000) (citing *Hybritech Inc. v. Abbott Laboratories*, 849 F.2d 1446, 1451 (Fed. Cir. 1988)). The likelihood of success and irreparable harm factors play a key role in the analysis, and a court may decline to issue the injunction if the patent owner fails to prove either of these. *Jeneric/Pentron*, 205 F.3d at 1380 (citing *Sofamor Danek Group, Inc. v. DePuy-Motech, Inc.*, 74 F.3d 1216, 1219 (Fed. Cir. 1996); *Polymer Technologies, Inc. v. Bridwell*, 103 F.3d 970, 973 (Fed. Cir. 1996)). To demonstrate a likelihood of success, the patent owner must show that, in light of the presumptions and burdens that will inhere at trial, it will likely prove that the accused product infringes its patents. *Bell & Howell Document Management Products Company v. Altek Systems*, 132 F.3d 701, 705 (Fed. Cir. 1997); *Genentech, Inc. v. Novo Nordisk, A/S*, 108 F.3d 1361, 1364 (Fed. Cir. 1997). In deciding whether the patent owner has satisfied this factor, the court must determine whether the evidence shows that the accused device is likely to fall within the scope of the claims, as construed by the court. *See Sofamor*, 74 F.3d at 1220.

Dey argues that the preliminary injunction motion should be denied because the plaintiffs, having put on all their evidence, have failed to demonstrate that they will likely prove that the accused product infringes, either literally or under the doctrine of equivalents, each and every element of claim 1 of the '839 patent. Tanabe and Abbott concede that they cannot prove Curosurf® literally infringes each and every element of claim 1, the only independent claim in the '839 patent. The evidence presented by the plaintiffs at the preliminary injunction demonstrates that this is so, and the Court so finds. Specifically, the Court finds that the plaintiffs cannot show that Curosurf® literally infringes the element of claim 1 that the surface active material consists of 68.6-90.7% phospholipid. The plaintiffs presented evidence sufficient to demonstrate that the

2

surface active material used to make Curosurf® (what has been referred to throughout this case as the precursor or paste) literally falls within the ranges specified in the '839 patent for neutral lipids, cholesterol, carbohydrate, protein, free fatty acid and water.[1] But they could not do the same for phospholipid; the plaintiffs' testing showed that one lot of the Curosurf® paste contained 95.4% phospholipid and another lot contained 91.8% phospholipid, both outside the 90.7% upper limit claimed in the patent. Because a party seeking to prove infringement must demonstrate that the accused product reads on each and every element of a claim, *see Rohm & Haas Co. v. Brotech Corp.*, 127 F.3d 1089, 1092 (Fed. Cir. 1997) (citing *Lemelson v. United States*, 752 F.2d 1538, 1551 (Fed.Cir.1985); *Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533, 1535 (Fed.Cir.1991)), the plaintiffs' literal infringement claim would fail as would the case, unless the plaintiffs are permitted to prove infringement of the phospholipid element of claim 1 under the doctrine of equivalents. Thus, the plaintiffs' ability to demonstrate a likelihood of success on the merits and, in turn, their ability to succeed in obtaining a preliminary injunction motion, hinge on whether as a matter of law a range of equivalents broad enough to include the phospholipid percentages found in the Curosurf® paste is available.[2]

---

[1]Although Dey has challenged the testing methodology used by the plaintiffs to support these findings, the Court finds that the plaintiffs have introduced evidence sufficient, at least for purposes of a preliminary injunction motion, to sustain their burden of demonstrating that the components other than phospholipid fall within the ranges claimed in the '839 patent.

[2]In its June 28, 2000 opinion, the Court ruled that a statement made during the prosecution of the '301 patent would bar the plaintiffs from using the doctrine of equivalents to exclude a wider range of phospholipid than that claimed in the '301 patent. At a telephone hearing held after that opinion was issued, the Court clarified that that statement could not simply be lifted out of context and attributed to the '839 patent application, which had not even been filed at the time the statement was made. Thus the prosecution history estoppel argument is not available with respect to the '839 patent, and the questions of whether and how the doctrine of equivalents applies to the '839 patent remained open going into the

(continued...)

"Infringement may be found under the doctrine of equivalents if an accused product 'performs substantially the same overall function or work, in substantially the same way, to obtain substantially the same overall result as the claimed invention.'" *Wilson Sporting Goods Co. v. David Geoffrey & Associates*, 904 F.2d 677, 683 (quoting *Pennwalt Corp. v. Durand-Wayland, Inc.*, 833 F.2d 931, 934 (Fed. Cir. 1987) (en banc), *cert. denied*, 485 U.S. 961 (1988). The doctrine requires that the accused product contain each limitation of the claim or its equivalent. *Jeneric/Pentron*, 205 F.3d at 1383 (citing *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 40 (1997)). The phospholipid element of claim 1 of the '839 patent is the only element for which the plaintiffs seek to resort to the doctrine of equivalents, and the Court therefore focuses exclusively on this element for purposes of deciding Dey's motion. *See Warner-Jenkinson*, 520 U.S. at 30 (the doctrine "must be applied to individual elements of the claim, not the invention as a whole," and courts must "ensure that the application of the doctrine, even as to an individual element, is not allowed such broad play as to effectively eliminate that element in its entirety.").

At the hearing on plaintiffs' motion for a preliminary injunction, the plaintiffs introduced evidence demonstrating that a surface active material containing a percentage of phospholipid higher than that disclosed in the '839 patent--indeed as high as 99.5 or 99.99%, *see* Transcript of Proceedings from July 6, 2000, at 66-67, 138--would behave the same as a surface active material containing a percentage within the range claimed in the patent. Based on this evidence, the Court finds that the plaintiffs introduced evidence sufficient to show that the phospholipid in

---

[2](...continued)
preliminary injunction hearing.

Curosurf® performs substantially the same overall function as the phospholipid in the surface active material claimed in the '839 patent, and it does so in substantially the same way to obtain substantially the same overall result as the surface active material claimed in the '839 patent.

But does that necessarily mean that the phospholipid range plaintiffs may claim extends to the upper limit suggested by the plaintiffs' witness? The Court concludes that this is not the case, for two reasons. First, the '839 patent is an improvement patent, not a pioneer patent. The patent itself discloses that the claimed invention "is concerned with the improvement of TA-546 [the surface active material disclosed in the '301 patent] on the basis of the above described discovery [the discovery that surface tension reducing capacity and spreadability can be enhanced by increasing the relative amount or content of free fatty acids in TA-546 from something less than 1.0% to 1.0-27.7%], as well as the provision of a pharmaceutical composition useable in the treatment of RDS in adults and premature infants." U.S. Patent No. 4,397,839, col. 1, lines 39-50. Because the '839 patent was issued as an improvement over a prior claimed invention, it is not entitled to the broad range of equivalents it might be if it was a pioneer patent; instead, only a more restricted, narrow range of equivalents is available. *See Thomas & Betts Corp. v. Litton Systems, Inc.*, 720 F.2d 1572, 1580 (Fed. Cir. 1983). The plaintiffs made no effort to narrow the range of equivalents available on the phospholipid element; instead they offered testimony suggesting that a phospholipid percentage as high as 99.99% would have functioned in the same way, effectively and improperly reading out the phospholipid range limitation altogether. *See Warner-Jenkinson*, 520 U.S. at 29 (the doctrine of equivalents, even as to an individual element, should not be allowed such broad play as to effectively eliminate that element in its entirety); *K-2 Corp. v. Salomon S.A.*, 191 F.3d 1356,

5

1367 (Fed. Cir. 1999) (the doctrine of equivalents cannot be used to vitiate an element from the claim in its entirety); *Tronzo v. Biomet, Inc.*, 156 F.3d 1154, 1160 (Fed. Cir. 1998) (if a theory of equivalence would vitiate a claim limitation, then there can be no infringement under the doctrine of equivalents as a matter of law).

Moreover, "there can be no infringement if the asserted scope of equivalency of what is literally claimed would encompass the prior art." *Wilson*, 904 F.2d at 683 (citing *Pennwalt*, 833 F.2d at 934; *Senmed, Inc. v. Richard-Allan Medical Industries*, 888 F.2d 815, 821 (Fed. Cir. 1989)). In other words, to the extent an asserted range of equivalents covers what is already in the public domain, that range is unavailable under the doctrine of equivalents. "[S]ince prior art always limits what an inventor could have claimed, it limits the range of permissible equivalents of a claim." *Wilson*, 904 F.2d at 684. To determine whether prior art restricts the range of equivalents to what is literally claimed, the Court visualizes a hypothetical patent claim sufficient in scope to literally cover the accused product and then asks whether that hypothetical claim could have been allowed by the PTO over prior art. *See Wilson*, 904 F.2d at 684. In this case, that means the Court must ask whether a claim specifying a surface active material characterized in that the overall phospholipid content is 91.8% or 95.4% (the percentages found in the two lots of Curosurf® paste) would have been allowed over the prior art. The Court believes that a claim so written never would have been allowed by the PTO; certainly the plaintiffs have failed to demonstrate that a claim so written would have been allowed, and it is their burden to do so. *See Wilson*, 904 F.2d at 685 (the burden is on the party seeking to avail itself of the doctrine of equivalents to prove that the range of equivalents which it seeks would not ensnare the prior art). To cover the phospholipid percentages found in the Curosurf® paste, the '839 patent would have

6

had to adopt the phospholipid percentages claimed in the '301 patent (75.0-95.5%), and if this had been the case, the PTO would likely have disallowed the claim as clearly anticipated by the prior art. Indeed, allowing the plaintiffs to extend through the doctrine of equivalents the '839 patent's phospholipid range up to the now-expired '301 patent's phospholipid range would improperly extend the monopoly power granted the plaintiffs under the '301 patent.

Though the plaintiffs presented no evidence on this point at the preliminary injunction hearing, in a brief filed after the Court gave an in-court oral summary of its ruling on Dey's motion, they argue that claim 1 of the '839 patent would have been allowed even if written to include an upper phospholipid range of 95.5% because "[t]he basis for patentability of the '839 patent--the existence free fatty acid content--remains the same in the actual and hypothetical claims." Brief on Prior Art Limitation to the Doctrine of Equivalents and the '839 Patent, p. 3. This is somewhat misleading. It is true that the free fatty acid percentage range in the hypothetical claim would be the same as that in the actual claim. But the *existence* of free fatty acid in the surfactant material claimed in the '839 patent is not what made it unique; free fatty acid was present in TA-546, the surface active material disclosed in claim 1 of the '301 patent. What made the material disclosed in the '839 patent unique was the *increase* in the free fatty acid content over that found in the '301 patent. *See* U.S. Patent No. 4,397,839, col. 1, lines 36-50. That increase necessarily required a corresponding decrease in one or more of the material's other components. Thus, the change in percentages and the ratio among the various components must indeed have been significant to the patent examiner, and the Court has no reason to believe the claim would have been allowed without the alterations made to the percentage ranges of both free fatty acid and phospholipid. Accordingly, the Court finds that the range of equivalents to

7

which the plaintiffs are entitled on the phospholipid element of claim 1 of the '839 patent does not include the percentages found to exist in the Curosurf® paste.

Based on this finding and the other findings set forth in this opinion, the Court concludes that the plaintiffs have not demonstrated a likelihood that they will be able, at trial, to prove infringement literally or under the doctrine of equivalents. The Court therefore grants Dey's motion and denies Tanabe and Abbott's preliminary injunction motion. The case is set for status on October 16, 2000 at 9:30 a.m.

Dated: July 25, 2000

MATTHEW F. KENNELLY
United States District Judge