Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 1725 | **DATE** | 5/18/2001 |
| **CASE TITLE** | Abbott vs. Dey | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. The Court finds that the plaintiffs are unable as a matter of law to prove infringement either literally or under the doctrine of equivalents. Dey's supplemental motion for summary judgment (69-1) is granted; the original motion (65-1) is dismissed as moot. The counterclaim is dismissed without prejudice. Final judgment is entered in favor of the defendants and against the plaintiff.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | |
| | No notices required. | | MAY 21 2001 | |
| | Notices mailed by judge's staff. | | date docketed | |
| | Notified counsel by telephone. | | | |
| ✓ | Docketing to mail notices. | | docketing deputy initials | 77 |
| ✓ | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | ED-7 FILED FOR DOCKETING 01 MAY 18 PM 4:30 | MAY 21 2001 date mailed notice | |
| OR | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ABBOTT LABORATORIES, MITSUBISHI-TOKYO PHARMACEUTICALS, INC. f/k/a TOKYO TANABE CO., LTD., | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 00 C 1725 |
| DEY, L.P. and DEY, INC., | ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

DOCKETED
MAY 21 2001

MATTHEW F. KENNELLY, District Judge:

On July 26, 2000 this Court found that the plaintiffs failed to demonstrate a likelihood that they would be able at trial to prove infringement literally or under the doctrine of equivalents and accordingly denied their motion for a preliminary injunction. *See Abbott Laboratories v. Dey, L.P.*, No. 00 C 1725, 2000 WL 1029198 (N.D. Ill. July 26, 2000). Today we let the other shoe drop and enter summary judgment for the defendants.

Defendants first filed their motion for summary judgment in late September 2000. At that time, because plaintiffs' appeal from the denial of their motion for preliminary injunction had been filed, the Court decided to defer briefing on summary judgment until after that appeal was decided. In hindsight, this was probably ill-advised; the case was in fact ripe for summary judgment, and it is no doubt preferable for the Court of Appeals to review a complete record as opposed to an interlocutory ruling. In early March of this year, defendants supplemented their motion for summary judgment. This caused the Court to rethink its decision to defer briefing,

and when the parties appeared for a previously-scheduled status hearing in mid-March, the Court decided to follow the course it should have taken last fall: to proceed with briefing on summary judgment. The present decision may create a bump in the road in the determination of the already-pending appeal, but in the long run it will facilitate a complete resolution of this case.

The pertinent facts are not disputed. The plaintiffs hold the rights in two United States patents, one expired (U.S. Patent No. 4,338,301) and one live (U.S. Patent No. 4,397,839). The '301 patent disclosed in claim 1, the patent's only independent claim:

> [s]urface active material containing phospholipid, neutral lipid, total cholesterol, carbohydrate, protein and water, which material is obtained from lung tissue of a mammal with or without further phospholipid, characterized in that the phospholipid content is 75.0-95.5%, the neutral lipid content is 1.8-14.0%, the total cholesterol content is 0.0-3.0%, the carbohydrate content is 0.1-1.5%, the protein content is 0.5-5.0% and water content is 1.7-6.0%, all based on the dried weight of said material . . ." U.S. Patent No. 4,338,301 at col. 17, lines 59-67.

The '839 patent was issued as an improvement over the '301 patent; the patent's specification states that "the present invention is concerned with the improvement of TA-546 [the surface active material disclosed in the '301 patent] . . . ." U.S. Patent No. 4,397,839 at col. 1, lines 46-47. Claim 1 of the '839 patent discloses:

> a surface active material comprising (1) phospholipid, neutral fat, total cholesterol, free fatty acids, carbohydrate, protein and water, all of which are obtained from the lung tissue of a mammal, and (2) optionally at least one additional component selected from the group consisting of a phosphatidylcholine, a neutral fat and a free fatty acid, characterized in that the overall phospholipid content is 68.6-90.7%, the overall neutral fat content is 0.3-13.0%, the total cholesterol content is 0.0-8.0%, the overall free fatty acid content is 1.0-27.7%, the carbohydrate content is 0.1-2.0%, the protein content is 0.0-3.5%, and the water content is 2.1-5.2%, all based on the dry weight of the material . . . . *Id.*, col. 17, lines 13-25.

The plaintiffs allege that Curosurf®, a lung surfactant product developed and manufactured by

defendants' licensor, infringes claim 1 of the '839 patent; they also allege infringement of claims 9 and 12-15, though our decision on claim 1 is determinative since it is the only independent claim.

At a hearing on plaintiffs' preliminary injunction motion, the plaintiffs introduced evidence showing that the accused product, Curosurf® (actually the precursor or "paste"), contained a higher percentage of phospholipid than that claimed in the patent; one lot tested contained 95.4% phospholipid and another lot contained 91.8% phospholipid, both outside the 90.7% upper limit claimed in the patent. Based on this evidence, the Court finds that the plaintiffs cannot prove literal infringement. *See Rohm & Haas Co. v. Brotech Corp.*, 127 F.3d 1089, 1092 (Fed. Cir. 1997) ("To show literal infringement of a patent, a patentee must supply sufficient evidence to prove that the accused product or process meets every element or limitation of a claim.") (citations omitted). Thus, unless the plaintiffs can prove infringement under the doctrine of equivalents, Dey is entitled to judgment as a matter of law on the plaintiffs' infringement claim.

When infringement under the doctrine of equivalents is alleged, "two primary legal limitations on the doctrine 'are to be determined by the court either on a dispositive pretrial motion or on a motion for judgment as a matter of law at the close of evidence and after the jury verdict.' Those legal limitations are prosecution history estoppel and the 'all elements rule'." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 234 F.3d 558, 586 (Fed. Cir. 2000) (quoting *Warner-Jenkinson Co. v. Hilton Davis Chemical Co.*, 520 U.S. 17, 39 n.8 (1997)). Prosecution history estoppel precludes a patentee from obtaining under the doctrine of equivalents coverage of subject matter it relinquished–whether by amendment of claims or by

3

arguments made to obtain allowance of claims–during the prosecution of its patent application. *Pharmacia & Upjohn Co. v. Mylan Pharmaceuticals, Inc.*, 170 F.3d 1373, 1376-77 (Fed. Cir. 1999). The test for determining what subject matter the patentee surrendered is objective; we ask "whether a competitor would reasonably believe that the applicant had surrendered the relevant subject matter." *Id.* at 1377 (quoting *Cybor Corp. v. FAS Technologies, Inc.*, 138 F.3d 1448, 1457 (Fed. Cir. 1998)). Here, the Court finds that a competitor would reasonably believe, based on the specification and claims of the '839 patent, and the prosecution history of the '301 patent, that the patentee relinquished the right to exclude any surface active material containing, among other things, more than 90.7% phospholipid based on dry weight.

The '839 patent's specification states that after obtaining the '301 patent the inventor continued to tinker with the surface active material disclosed therein and discovered that "several important properties (i.e., surface tension-reducing capacity, spreadability over a liquid surface, and adsorbabiity to a gas-liquid interface) of TA-546 [the surface active material disclosed in the '301 patent] can be enhanced by increasing the relative amount or content of free fatty acids [from less than 1.0%] to 1.0-27.7% based on the total weight of TA-546." *Id.*, col. 1, lines 36-45. In short, the patentee unequivocally disclosed in the specification of the '839 patent that the chemical composition set out in the patent–like the chemical composition set out in the '301 patent, *see Abbott Laboratories v. Dey, L.P.*, 110 F.Supp.2d 667, 675 (N.D. Ill. 2000) (citing Application for U.S. Patent No. 4,338,301, Prosecution History at p. 79-80)–was significant and that the changes made in that composition (specifically the increase in free fatty acids and the necessary corresponding decrease in one or more of the other components of the material) were similarly significant. The plaintiffs should not now be able to argue that those percentage ranges

4

place no limit on their right to exclude competitors' products–which is essentially the position they took at the preliminary injunction hearing when they elicited testimony from their expert that a surface active material with a phospholipid content of up to 99.9% would behave the same as one with a phospholipid content within the range specified in the patent. If that were truly the case, one wonders why the patentee would ever have included the percentage ranges for the chemical components to begin with. The bottom line is this: the patentee chose to include specific percentage ranges for each chemical component in the surface active material, and by doing so he created a record that fairly notified the public that he was surrendering the right to exclude material comprised of even the same components in different percentages. The plaintiffs cannot recapture that surrendered subject matter through the doctrine of equivalents; nor can they recapture through the doctrine of equivalents the higher phospholipid percentage surrendered from the '301 patent with the issuance of the '839 patent. *See Festo*, 234 F.3d at 565; *Bayer AG v. Elan Pharmaceutical Research Corp.*, 212 F.3d 1241, 1252-54 (Fed. Cir. 2000) (subject matter clearly and unmistakably surrendered in statements made to the PTO cannot be recaptured through the doctrine of equivalents).

The plaintiffs argue–correctly–that Dey has cited no authority for the proposition that the prosecution history of one patent is controlling when analyzing an estoppel claim related to another patent. But at least in this case, where the patent-in-suit discloses an improvement of the product and process disclosed in the earlier patent, consideration of the earlier patent's prosecution history makes good sense. Although the Court stated that it would be improper to simply lift out of context statements made to secure the '301 patent and impose them on the '839 patent, the Court did not hold and does not think it appropriate to hold that the prosecution

5

history of the '301 patent was entirely off-limits.

For the reasons explained above, the Court finds that the plaintiffs are unable as a matter of law to prove infringement either literally or under the doctrine of equivalents. Dey's supplemental motion for summary judgment [69-1] is granted; the original motion [65-1] is dismissed as moot. The Clerk is directed to enter judgment in favor of the defendants.

Dated: May 18, 2001

MATTHEW F. KENNELLY
United States District Judge